SO ORDERED: July 27, 2011.



_____
Frank J. Otte
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| IN RE: | ) |
| | ) |
| GLENDA NEIDHAMER CUMMINGS | ) CASE NO.09-10471-FJO-7 |
| | ) |
| Debtor | ) |
| | ) |
| GLENDA NEIDHAMER CUMMINGS | ) |
| Plaintiff | ) |
| | ) |
| vs. | ) Adversary Proceeding |
| | ) No.09-50536 |
| CHASE a/k/a CHASE BANK USA | ) |
| Defendant | |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW ON
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on the Motion for Summary Judgment filed by the Defendant. The Plaintiff filed a response thereto. The Court held a hearing on this matter and it is now ready for the Court's consideration. The Court now makes its findings and conclusions pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

1

## FINDINGS OF FACT

1. On July 22, 2009, the Plaintiff filed a voluntary chapter 7 bankruptcy petition.

2. For several years prior to the bankruptcy, the Plaintiff and her husband had been using two credit cards issued by the Defendant to the Plaintiff. At her Deposition, the Plaintiff testified that, as of the date she filed the bankruptcy petition, the Plaintiff knew she was not delinquent on any payments to the Defendant. (**Doc 38** 21:14-18; 22:21-25; 23:1-7.)

3. Before filing the bankruptcy petition, the Plaintiff had been advised by her attorneys to keep a pad of paper next to the phone and to write down information regarding any calls she received after July 22, 2009, the date she filed her bankruptcy petition. (**Doc 38** 21:3-6.) Although the Plaintiff had not received any collection calls from any of her creditors before (**Doc 38** 21:11-13; 30:19-20), since she had only received calls from creditors trying to "offer [her] something" (**Doc 38** 21:12), the Plaintiff's lawyers told her that none of her creditors were allowed to contact her after the bankruptcy petition was filed. (**Doc 38** 21:8-10.)

4. According to the Plaintiff's testimony, she began receiving telephone calls from the Defendant on July 30, 2009, and the calls continued for around 33 days until about August 25, 2009, totaling about 49 calls in all. (**Doc 38** 5:15-20; **Doc 1** ¶ 15-17.)

5. The Plaintiff never answered any of the alleged calls; nor did she ever speak with anyone making the alleged calls. (**Doc 38** 28:7-12.) The only time she heard a voice in connection with any of the calls was when a person who identified herself as "Marian" left a voice message stating that she had an "urgent message" for the Plaintiff. (**Doc 38** 27:22-25; 37:7-13.) The Plaintiff, however, cannot remember whether Marian identified herself as being

2

associated with the Defendant.  (**Doc 38** 23:18-24.)  No other messages were left with any of the other calls, and the only reason the Plaintiff believed any of the alleged calls were made by the Defendant is that the Plaintiff's caller identification machine indicated that the number from which the calls were made belonged to "CHASE."  (**Doc 38** 23:21-34.)  Every evening, the Plaintiff would write down the date, time, and telephone number of all calls logged by their caller identification machine as coming from "CHASE," just as the Plaintiff's attorneys had instructed.  (**Doc 38** 21:3-6; 43:12-15.)

      6.  Despite taking the time to log these calls and despite characterizing the calls as demands for payment in her Complaint (**Doc 1** ¶ 15), the Plaintiff never actually believed any of the calls were demands for payment made by the Defendant.  (**Doc 38** 42:10-15; 33:5-25.)  She did not believe the first call and message from Marian was a demand for payment because Marian did not demand any payment and the Plaintiff knew she was not delinquent on any payment to the Defendant.  (**Doc 38** 31:1-17; 28:1-5; 33:5-25.)  The Plaintiff testified that the first payment she could have missed could only have been in August 2009, about a month after she filed her bankruptcy petition and about the same time the calls actually stopped.  (**Doc 38** 23:1-17).  The Plaintiff did not hear any voice from the Defendant in any subsequent calls and thus never heard any demand for payment in those phone calls either.  (**Doc 38** 28:1-14; 31:1-17; 35:5-25; 34:15-21.)  The Plaintiff has admitted that she was not sure why she was receiving the calls.  (**Doc 38** 41:7-12.)  The Plaintiff had never received any calls before from creditors demanding payment.  (**Doc 38** 30:19-22.)  The idea that these calls from the Defendant had any relation to her bankruptcy or payment was because her lawyers suggested it to her.  (**Doc 38** 41:10-12; 42:7-15.)

3

7. On August 25, 2009, the alleged calls stopped. (**Doc 38** 5:9-10.) The Plaintiff does not know why the calls stopped. (**Doc 38** 5:19-20.) She did not ask her attorneys to contact the Defendant and request that the calls be stopped (**Doc 38** 29:23; 38:3-24), she does not know if anyone called the Defendant on her behalf to ask that the calls be stopped, and her attorneys advised her not to return any of the alleged calls. (**Doc 38** 29:19-25.)

8. On September 11, 2009, the Plaintiff filed her Complaint, alleging that the Defendant violated the automatic stay provided by 11 U.S.C. § 362(a)(3) by making the alleged phone calls. (**Doc 1** ¶ 15-18.) Section 362(a)(3) provides that a filed bankruptcy petition "operates as a stay, applicable to all entities, of … any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." Based upon these alleged violations, the Complaint seeks to recover actual damages, punitive damages, and legal fees from the Defendant. (**Doc 1** ¶ 19.)

9. On October 15, 2010, the Plaintiff's Deposition was taken. At the Deposition, the Plaintiff testified to the specific facts concerning the calls and other allegations in the Complaint. (*See supra* ¶¶ 3-9.) In addition, the Plaintiff testified that the calls did not interfere with her daily routine, her professional obligations, or her personal bowling hobbies. (**Doc 38** 51:9-25.) The only injury the Plaintiff testified to have suffered is a fifteen-minute period of emotional discomfort she would experience after checking her caller identification machine and seeing numbers logged for incoming calls from "CHASE". (**Doc 38** 51:9-25; 52:1-4.) The Plaintiff testified that seeing these calls caused her emotional discomfort because it caused her to think about her struggle with cancer, losing her job, and being sued by her sister. (**Doc 38** 43:23-25; 44:1-9.) Other than her husband, a friend, and her lawyers, the Plaintiff never consulted with

4

anyone about the calls or the emotional discomfort she experienced, such as a doctor, and the Plaintiff never took any medications as a result of the calls. (**Doc 38** 50:8-25.)

10. When asked at the Deposition whether the she had paid her lawyers to bring the adversary proceeding against the Defendant, the Plaintiff testified that her lawyers had agreed to take fifty percent of any amounts she ultimately wins in the lawsuit. (**Doc 38** 47:5-19.) When asked how much she was seeking to recover from the Defendant as compensation for her alleged injuries, the Plaintiff testified that she had no particular amount in mind, but had been advised by her lawyers that she should receive $500 to $1000 per call. (**Doc 38** 44:15-20; 45:15-22; 46:13-25.)

11. On December 14, 2010, the Defendant filed its Summary Judgment Motion and Brief. In its Summary Judgment Motion and Brief, the Defendant argues that there is insufficient evidence to enable any rational trier of fact to find (I) that any of the alleged calls were actually made by the Defendant, (ii) that any calls were demands for payment or attempts to obtain or possess estate property prohibited by 11 U.S.C. § 362(a)(3), (iii) that the Plaintiff suffered any compensable actual damages, or (iv) that punitive damages are warranted. The Defendant also argues in the Summary Judgment Motion and Brief that the Plaintiff's own deposition testimony negates essential elements of her claims, namely, (I) that any calls were demands for payment or attempts to obtain or possess estate property and (ii) that the Plaintiff suffered any compensable actual damages as a result of the calls.

12. On January 27, 2011, the Plaintiff filed her Response. Despite citing 11 U.S.C. § 362(a)(3) in the Complaint as the section allegedly violated by the alleged calls from the Defendant, the Plaintiff's Response states that the Plaintiff intended to allege a violation of 11

5

U.S.C. § 362(a)(6).  (**Doc 44** pp. 3-4.)  Section 362(a)(6) provides that a filed bankruptcy petition "operates as a stay, applicable to all entities, of … any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title."

13.  In the Response, the Plaintiff admits that she does not know the purpose of the alleged calls.  However, she still argues that "because all inferences must be drawn from the underlying facts in the light most favorable to the nonmovant, the Court can safely assume that Chase was not calling to thank Cummings personally for her contributions to TARP."  (**Doc 44** p. 4.)  Similarly, the Plaintiff further argues that because "the Court has no reason to doubt that Chase intended to make" the calls, they were "willful violations" of the stay provided by 11 U.S.C. § 362(a)(6).

14.  The Plaintiff's Response accompanied an exhibit that included excerpts of a transcript of the oral deposition of the Plaintiff's husband.  (**Doc 44** pp. 9-17.)  At his deposition the Plaintiff's husband testified that he "believes" the Plaintiff's attorneys tried to call the Defendant and may have gotten through.  (**Doc 44** p. 12; 11:15-25; 12:1-3.)  Relying upon this transcript, the Plaintiff's Response argues that "this Court could easily infer from the evidence before it, that it was necessary for Cummings to file suit in order to get the calls to stop in which case the costs to the Plaintiff of traveling to her attorneys' offices to prepare this suit as well as attend the deposition which Chase conducted would be actual damages to which she is entitled to be compensated."  (**Doc 44** p. 7.)  The Plaintiff did not attach to the Response any affidavit or other verification from any attorney for the Plaintiff stating that any such calls to the Defendant were made or otherwise describing such calls.

15.  On February 10, 2011, the Defendant filed its Reply.  In the Reply, the Defendant

6

argues that the Response failed to provide admissible evidence in support its contentions. Specifically, the Reply argues that the Plaintiff's husband's testimony is not admissible and competent.  The husband's testimony that he "believed" the attorneys contacted the Defendant to have the alleged calls stopped was, according to the Reply, merely speculative, and because no foundation has been laid to explain how the Plaintiff's husband could have such a belief from first-hand witness, it is thus incompetent evidence.  (**Doc 48 ¶ 5.**)  Moreover, the Reply argues that the husband's belief is most likely drawn from his conversations with the Plaintiff's attorneys and, as such, is inadmissible hearsay not subject to any exception.  (**Doc 48 ¶ 5.**) Because no admissible evidence supports the Response's claims that any of the alleged calls were demands for payment (**Doc 48 ¶ 15**) or that the Plaintiff had to file the lawsuit to halt the calls (**Doc ¶¶ 18-25**), the Reply argues that the Court cannot draw these inferences in the Plaintiff's favor such that the Plaintiff's claims would withstand a summary judgment disposition for the Defendant.  (**Doc ¶ 16.**)

## CONCLUSIONS OF LAW

1.  This Court has jurisdiction to hear and determine all matters raised in this adversary proceeding pursuant to 28 U.S.C. § 157(b)(2), as well as all applicable orders of the United States District Court for the Southern District of Indiana.

2.  A court should grant summary judgment if "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed. R. Civ. Proc. 56©; Fed. R. Bankr. Proc. 7056; *see also Indiana Grocery, Inc. v. Super Valu Stores, Inc.*, 864 F.2d 1409, 1412 (7th Cir. 1989).  An issue of fact is material if its determination affects the outcome of a proceeding under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242 (1986). "No genuine issues of material fact exist when a rational finder of fact could not rule in favor of the non-movant." *Wills v. Sallie Mae Servicing*, No. 08-80404-FJO-07, Adversary No. 08-58043 (Bankr. S.D. Ind. April 23, 2010) (citing *In re Bryson*, 187 B.R. 939, 955 (Bankr.N.D.Ill. 1995).

    3. Defendants moving for summary judgment on a plaintiff's claim need only make either of two showings to prevail. Specifically, the defendant may prevail by showing that the plaintiff cannot prove at least one essential element of the plaintiff's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986). Alternatively, the defendant may also prevail by showing how the evidence negates at least one essential element of the plaintiff's claim. *Id*. at 323.

    4. Once a defendant makes either of these showings, a plaintiff's claim will not withstand summary judgment disposing of it unless the plaintiff shows there is a genuine issue of fact for trial, which requires "more than simply show[ing] that there is some metaphysical doubt as to the material facts .... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).

    5. After the defendant has made its showing, the non-moving party must come forth with evidence showing what facts are in actual dispute. *Celotex Corp.*, 477 U.S.at 322-23. If the non-moving party fails to do so, summary judgment is proper. *United States v. Selenske*, 882 F.2d 220 (7th Cir. 1989). Mere conclusory assertions, whether made in pleadings or in affidavits, are not sufficient to defeat a proper motion for summary judgment. *First Commodity Traders, Inc. v. Heinhold Commodities, Inc.*, 766 F.2d 1007, 1011 (7th Cir. 1985).

6. An action for a violation of the bankruptcy stay is provided by § 362(k)(1) of the Bankruptcy Code, which states that "an individual *injured* by any willful *violation* of a stay provided by this section shall recover *actual* damages, including costs and attorneys' fees, and in *appropriate* circumstances, may recover punitive damages." 11 U.S.C. § 362(k)(1) (emphasis supplied). "The debtor, as the party seeking damages for willful stay violations, has the burden of proving by a preponderance of the evidence what stay violation occurred, what damages were suffered, and what relief is appropriate." *In re McCarthy*, 350 B.R. 820, 826 (Bankr. N.D. Ind. 2006) (citing *Ball v. A.O. Smith Corp.*, 321 B.R. 100, 110 (N.D.N.Y. 2005), *aff'd*, 451 F.3d 66 (2d Cir. 2006); *Heghmann v. Indorf* (*In re Heghmann*), 316 B.R. 395, 404-05 (1st Cir. BAP 2004)).

7. The Complaint alleges that the alleged calls are "gross and willful violation[s] of the Automatic Stay as set forth in 11 U.S.C. Section 362(a)(3)." (**Doc 1**, ¶ 18.) Section 362(a)(3) provides that a filed bankruptcy petition "operates as a stay, applicable to all entities, of … any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." The Plaintiff's Response, however, states that the Plaintiff intended to allege in her Complaint a violation of 11 U.S.C. § 362(a)(6). (**Doc 44**, pp. 3-4.)[1] Section 362(a)(6) provides that a filed bankruptcy petition "operates as a stay, applicable to all entities, of … any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title."

8. Regardless of which section the Plaintiff claims to have been violated, "two elements

---

[1] The Plaintiff did not move or seek leave to amend the Complaint so as to include or substitute a claim for a violation of 11 U.S.C. § 362 (a)(6). Although in its Reply, the Defendant properly objected (**Doc 48** ¶ 8) to the Plaintiff's unilateral introduction of this new claim in the response to the Defendant's motion for summary judgment, a ruling on this objection is not necessary because, as explained below, the Defendant is entitled to summary judgment, regardless of whether the Plaintiff claimed violations of § 362(a)(3), § 362(a)(6), or both.

9

are necessary to recover damages under Bankruptcy Code § 362.  First, there must be a willful violation of § 362(a)'s automatic stay provision.  Second, there must be an actual resultant injury." *Aiello v. Providian Fin. Corp.,* 257 B.R. 245, 249 (N.D. Ill. 200), *aff'd* 239 F.3d 876 (7th Cir. 2001); *see also Shinholt v. Homecomings Fin., LLC* (*In re Shinhollt*)*,* Adv. No. 07-50315 (Bankr. S.D. Ind. March 7, 2008) (quoting same). As an essential element of her claims, the Plaintiff must show that the Defendant somehow willfully violated § 362's stay.  *Aiello*,  257 B.R. at 249.  The Plaintiff claims that the calls allegedly made by the Defendant were willful violations of § 362 because they were either (a) acts to possess or control estate property prohibited by § 362(a)(3) or (b) acts to recover on a claim against the Plaintiff that arose before she filed her bankruptcy petition prohibited by § 362 (a)(6).  But, as explained below, the Court concludes that the calls were not willful violations of § 362 because no rational trier of fact could make such a finding on the evidence presented by this case.

     9.   The "respite provided by § 362 is not from [mere] communication with creditors, but from the threat of immediate action by creditors, such as a foreclosure or a lawsuit." *Matter of Duke*, 79 F.3d 43, 45 (7th Cir. 1996) (citing *Brown v. Pennsylvania State Employees Credit Union,* 851 F.2d 81, 86 (3d Cir. 1988) (internal quotations marks omitted).  To withstand dismissal on summary judgment against its claim for any alleged violation of the bankruptcy stay based upon an allegedly wrongful telephone call, the debtor must establish that "the call was an act against property of the estate." *Newcomer v. Litton Loan Servicing, L.P.* (*In re Newcomer*), 416 B.R. 166, 180-181 (Bankr. D. Md. 2009) *reconsidered for other matters on other grounds in Newcomer v. Litton Loan Servicing, L.P.* (*In re Newcomer*), 438 B.R. 527 (Bankr. D. Md. Sept. 30, 2010); *see also Aiello,* 257 B.R. at 249; *see also Shinholt,* Adv. No. 07-50315 (Bankr. S.D.

10

Ind. March 7, 2008).

10.  As an initial matter, whether the Defendant actually made the calls is an issue contested by the parties.[2]  Therefore, before the Court can infer that the calls were attempts to collect on a prepetition debt, the Court must first infer that the Defendant actually made the calls. The Plaintiff has adduced no evidence showing that the calls appearing on the Plaintiff's caller identification machine as "CHASE" were made from numbers actually belonging to the Defendant, Chase Bank USA, N.A., as opposed to other businesses having the word "Chase" in their names.  Nevertheless, the Plaintiff's deposition testimony that her caller identification machine logged incoming calls from "CHASE" may be sufficient for the Court to infer that the calls came from the Defendant.  This fact alone, however, is not sufficient for the Court to infer that the calls were attempts to collect on a prepetition debt.

12.  The Plaintiff's Response argues that although the Plaintiff admittedly does not know the purpose of the alleged calls, "because all inferences must be drawn from the underlying facts in the light most favorable to the nonmovant, the Court can safely assume that Chase was not calling to thank Cummings personally for her contributions to TARP." (**Doc 44**, p. 4.)  Similarly, the Plaintiff further argues that because "the Court has no reason to doubt that Chase intended to make" the calls, they were "willful violations" of the stay provided by 11 U.S.C. § 362(a)(6).

13.  The Plaintiff bears the burden of proving that the calls were stay violations.  *In re McCarthy*, 350  B.R. at 826; *Heghmann*, 316 B.R. at 404-05.  As a nonmovant responding to the Defendant's summary judgment on such issues for which she bears the burden, the Plaintiff bears

---

[2] Although there appears to be a genuine issue as to whether the Defendant actually made the calls alleged by the Plaintiff, this Court finds, upon the facts as presented, that this issue is not material, because, as explained herein, even if the calls were made by the Defendant, the Defendant is entitled to summary judgment.

the additional burden of coming forth with evidence showing that a genuine issue exists with respect to a material fact regarding whether the alleged calls were stay violations. *Celotex Corp.*, 477 U.S. at 322-23. Mere conclusory assertions or appeals to some metaphysical doubt will not satisfy the Plaintiff's summary judgment burden. *Matsushita Elec. Indus.*, 475 U.S. at 574; *First Commodity Traders, Inc.*, 766 F.2d at 1011. The Plaintiff's assertions that the Court can "assume" and has "no reason to doubt" that the calls were violations of either § 362(a)(3) or § 362 (a)(6) lack any evidentiary support and thus fail to carry the Plaintiff's burden in responding to the Defendant's motion for summary judgment.[3]

14. The Defendant conceivably has many reasons it could have for calling one of its customers that would not violate the stay (i.e. marketing solicitations, which the Plaintiff admits to having received from other creditors in the past [4] ). To carry her burden, the Plaintiff would have to show that something said in a message or call was a demand for payment. Without evidence of the "substance of the call" proving such an act against property of the estate or a demand for payment, the debtor cannot establish a § 362 violation. *Newcomer*, 438 B.R. at 527. Similarly, calls merely registered by a "caller identification mechanism," without more, cannot "result in any prohibited contact with" a debtor, and therefore are not violations of the automatic stay by that fact alone. *Hutchings v. Ocwen Fed. Bank* (*In re Hutchings*), 348 B.R. 847, n. 19 (Bankr. N.D. Ala. 2006). Thus, no reasonable trier of fact could find that the Defendant violated § 362(a)(3) or § 362(a)(6), even if the Defendant actually made the alleged calls.

---

[3] Although the Court, for purposes of deciding a motion for summary judgment, may assume facts asserted by the opposing party are true, it may do so only to the extent they are supported by admissible evidence. S.D.Ind. L.R. 56.1(e) which applies to adversary proceedings pursuant to S.D. Ind. B-7056-1.

[4] **Doc 38** 21:12.

15. More importantly, however, the Plaintiff herself has testified that she has no reason to believe any alleged calls—whether actually made by the Defendant or not—were demands for payment of any prepetition claim because she knew when she started receiving the calls that they could not have been demands for payment, as she was not delinquent on payments to the Defendant. (**Doc 38** 31:1-17; 28:1-5; 42:10-15; 33:5-25.) Thus, even if the Court were to assume facts asserted in the Response as true—i.e., that the alleged calls were collection attempts—it would have to make this assumption in contradiction to the Plaintiff's own testimony, which would be drawing an inference in a light less favorable to the Plaintiff because it would deprive the Plaintiff's testimony of credibility. Therefore, even when viewing the Plaintiff's testimony in a light most favorable to her by lending it full credibility, no rational trier of fact could conclude from the facts in this case that the Defendant attempted to control or obtain estate property or to collect, assess, or recover on any prepetition claim because not even the debtor-plaintiff herself believes the Defendant did demand or had any reason to demand payment from her. Thus, even if the Court were to draw a reasonable inference in the Plaintiff's favor that the calls were actually made by the Defendant, the Court has no reasonable basis for inferring that the calls were made to collect on a prepetition debt or to exercise control or obtain estate property.

16. The Court thus concludes that no rational trier of fact could find that the Defendant violated either § 362(a)(3) or § 362(a)(6); and, the Defendant is entitled to summary judgment in its favor as a matter of law.

17. Even if a rational trier of fact could conclude that the alleged calls were willful violations of § 362, the Plaintiff must also show, as an essential element of her claims, that such violations actually caused an injury suffered by the Plaintiff such that she is entitled to

13

compensable damages. *Aiello*, 257 B.R. at 249; *In re Hutchings*, 348 B.R. at 899-900. A merely technical violation of the stay alone is insufficient. *Id*.

18. In her Response, the Plaintiff argues that she was injured by the alleged calls because she found them "very distressing." (**Doc 44** p. 6.) During her Deposition, the Plaintiff testified that the calls did not interfere with her daily routine, her professional obligations, or her personal bowling hobbies. (**Doc 38** 51:9-25.) The only injury the Plaintiff testified to have suffered is a fifteen-minute period of emotional discomfort she would experience after checking her caller identification machine and seeing numbers logged for incoming calls from "CHASE." (**Doc 38** 51:9-25; 52:1-4.) The Plaintiff testified that seeing these calls caused her emotional discomfort because it caused her to think about her struggle with cancer, losing her job, and being sued by her sister. (**Doc 38** 43:23-25; 44:1-9.) Other than her husband, a friend, and her lawyers, the Plaintiff never consulted with anyone about the calls or the emotional discomfort she experienced, such as a doctor, and the Plaintiff never took any medications as a result of the calls. (**Doc 38** 50:8-25.) The Plaintiff did not explain in her Deposition or in her Response how the Court can reasonably infer that receipt of the alleged calls from the Defendant caused her to remember such things as her battle with cancer, her lost job, or the lawsuit brought against her by her sister. The Plaintiff has thus failed to show that these emotional distress injuries were actually caused by the alleged calls. *Aiello*, 257 B.R. at 249. *In re Hutchings*, 348 B.R. at 899-900.

19. Even if she could show her emotional distress was caused by the alleged calls, to recover damages under § 362, the Plaintiff still must show she "suffered a loss within the contemplation of section 362, which is to say a financial loss." *Aiello v. Providian Fin. Corp.*, 239 F.3d 876, 881 (7th Cir. 2001); *see also In re Chambers*, 324 B.R. 326, 331 (Bankr. N.D. Ohio

2005) (claimants' self-serving testimony of emotional distress did not suffice for proof of actual damages). But the Plaintiff has failed to show this as well.

20. The Response argues that the because this adversary proceeding was filed after the calls stopped, the Plaintiff suffered financial loss and damages in the form of the costs incurred to bring and litigate this adversary proceeding. To support this argument, the Response relies on testimony offered by the Plaintiff's husband that he "believes" the Plaintiff's attorneys contacted the Defendant in order to stop the calls. (**Doc 44**, p. 3 ¶ # 7 (citing Tr. of Dep. of K. Cummings, **Doc 44**, p. 12; 11:15-25 and 12:1-3).) This testimony is inadmissible, however, as the Plaintiff has not provided any foundation showing how her husband's "belief" is based upon first-hand witness, as opposed to mere speculation, or inadmissible hearsay. Fed. R. Evid. 601-02, 802. More importantly, the Plaintiff herself testified that she never asked anyone to contact the Defendant to make the calls stop, that she has no knowledge of anyone doing so, that she does not know why the calls stopped. (**Doc 38** 5:19-20; 29:19-25; 29:23; 38:3-24.) The Plaintiff also testified that she had not incurred any attorneys fees to bring this lawsuit or to get the calls to stop. (**Doc 38** 47:5-19.) The Response did not include any affidavits from any of the Plaintiff's attorneys stating any efforts undertaken to make the calls stop or the amounts charged to the Plaintiffs for so doing. Nor did the Response include any affidavit or other evidence showing the existence or amount of any costs actually incurred by the Plaintiff in undertaking such efforts or in bringing this adversary proceeding. Thus, the Plaintiff has failed to produce competent admissible evidence supporting the Response's allegation that the alleged calls stopped as a result of the Plaintiff's or her attorneys' efforts or that the Plaintiff has otherwise incurred any sort of

financial loss required for recovery under § 362.[5]

21.  Even if the Plaintiff incurred some costs in bringing and prosecuting this adversary proceeding, these costs, without more, cannot suffice for financial loss compensable in a § 362 action.  *See Shinholt*, Adv. No. 07-50315, pp. 3-4 (Bankr. S.D. Ind. March 7, 2008) (holding that injuries required for § 362 actions and financial loss compensable therefor must be unrelated to the prosecution of the action).

22.  The Plaintiff bears the burden of proving that the calls, if actually stay violations, injured the Plaintiff and caused a financial loss to her.  *Aiello*, 239 F.3d at 881; *In re Chambers*, 324 B.R. at 331; *In re McCarthy*, 350 B.R. at 826; *Heghmann*, 316 B.R. at 404-05.  As a nonmovant responding to the Defendant's summary judgment on issues for which she bears the burden, the Plaintiff bears the additional burden of coming forth with *evidence* showing that a genuine issue exists with respect to a material fact about whether such injury and financial loss exists.  *Celotex Corp.*, 477 U.S. at 322-23.  Mere conclusory assertions or appeals to some metaphysical doubt will not satisfy the Plaintiff's summary judgment burden.  *Matsushita Elec. Indus.*, 475 U.S. at 574; *First Commodity Traders, Inc.*, 766 F.2d at 1011.  The Response's assertions that the Plaintiff suffered emotional distress injuries are not financial losses compensable in a § 362 action and are thus not material.  *Aiello*, 239 F.3d at 881.  The Response's assertion that the Plaintiff suffered a financial loss lacks any support from competent admissible

---

[5] In fact, the forty-nine calls alleged to have been received in the twenty-six days between July 30, 2009 and August 25, 2009, would have occurred at a rate of almost two calls per day.  By the time the Plaintiff filed the Complaint on September 11, 2009, it had been seventeen days since the Plaintiff received one of the alleged calls.  There is no competent or admissible evidence showing that the Plaintiff or her attorneys undertook any efforts in those seventeen days to try and stop the Defendant from calling the Plaintiff.  Indeed, the Plaintiff herself testified that she does not know what caused the calls to stop.  (**Doc 38** 5:19-20.)  "In cases involving automatic stay violations, other bankruptcy courts have overwhelmingly held that debtors have an obligation to attempt to mitigate damages prior to seeking court intervention."  *Shinholt*, Adv. No. 07-50315 at p. 4 ¶ 6 (citing *Hutchings,* 348 B.R. at 854-855).

evidence.[6] Evidence of such financial loss should be in the immediate custody or control of the Plaintiff and her attorneys, and if it exists, must be produced in a response to a motion for summary judgment asserting that no such financial loss exists. Thus, the Plaintiff has failed to carry her burden in responding to the Defendant's motion for summary judgment.

23. The Plaintiff did not suffer any compensable financial loss from the alleged calls is demonstrated (and thus this essential element of her claim negated) by the testimony of the Plaintiff herself. When asked how much she was seeking to recover from the Defendant as compensation for her alleged injuries, the Plaintiff testified that she had no particular amount in mind, but had been advised by her lawyers that she should receive $500 to $1000 per call. (**Doc 38** 44:15-20; 45:15-22; 46:13-25.) The Plaintiff has not produced any evidence explaining how any single call caused $500 to $1000 in financial loss to the Plaintiff, much less how the thirty-three alleged calls caused $15,000 to $33,000 in financial loss.

24. The Court concludes that no rational trier of fact could find that the Plaintiff suffered any injury or financial loss compensable under § 362; and thus, the Defendant is entitled to summary judgment in its favor as a matter of law.

No Rational Trier of Fact Could Find Appropriate Circumstances Existing to Warrant Punitive Damages.

25. A debtor seeking an award of punitive damages under § 362 for stay violations must prove "appropriate circumstances" justifying the award of such extraordinary damages. 11 U.S.C. § 362(h). Because no stay violation has occurred, punitive damages are categorically

---

[6] Although the Court, for purposes of deciding a motion for summary judgment, may assume facts asserted by the opposing party are true, it may do so only to the extent they are supported by admissible evidence. S.D.Ind. L.R. 56.1(e) which applies to adversary proceedings pursuant to S.D. Ind. B-7056-1.

inappropriate.

26. Even if the alleged phone calls in this case could be construed as violations, the none of the facts of this case show "appropriate circumstances" warranting punitive damages. "Appropriate circumstances" requires that "the violator's acts be egregious, vindictive, malicious, or accompanied by bad faith." *Hutchings*, 348 B.R. at 847. "[E]gregious, intentional misconduct on the violator's part is necessary to support a punitive damages award." *United States v. Ketelsen* (*In re Ketelsen*), 880 F.2d 990, 993 (8th Cir. 1989). "An additional finding of maliciousness or bad faith on the part of the offending creditor warrants the further imposition of punitive damages pursuant to 11 U.S.C. § 362(h)." *Crysen/Montenay Energy Co. v. Esselen Assocs., Inc.* (In re Crysen/Montenay Energy Co.), 902 F.2d 1098, 1105 (2nd Cir. 1990). "[O]nly egregious or vindictive misconduct warrants punitive damages for willful violations of the automatic stay of 11 U.S.C. § 362." *Davis v. Internal Revenue Serv.*, 136 B.R. 414, 424 (E.D. Va. 1992). Punitive damages are only appropriate where "there exists a complete and utter disrespect for of the bankruptcy laws" *In re Perviz*, 302 B.R. 357, 373 (Bankr. N.D. Ohio 2003).

27. The debtor-plaintiff has offered no evidence of appropriate circumstances for punitive damages, even if a stay violation had occurred. Nothing in any evidence would support such an award. The Plaintiff never heard a demand for payment in any alleged call or believed any alleged call to be a demand for payment, much less an "egregious or vindictive" communication. (**Doc 38** 31:1-17; 28:1-5; 42:10-15; 33:5-25.) Moreover, the Plaintiff has admitted that the calls she complained of ceased without her even requesting that they be stopped (**Doc 38** 5:19-20; 29:19-25; 29:23; 38:3-24), thus proving the inappropriateness and lack of any necessity for punitive damages in this case, even if the calls actually came from the Defendant and were stay

violations. *See, e.g., In re Corringe*, 348 B.R. 789, 795 (Bankr. D. Idaho 2006) (finding award of punitive damages improper where creditor responded to notification of alleged violation by stopping allegedly volatile actions).

28. The Court thus concludes that no rational trier of fact could find appropriate circumstances warranting punitive damages under § 362; and thus, the Defendant is entitled to summary judgment in its favor as a matter of law.

29. This Court concludes that there are no genuine issues of material fact and that the Defendant Chase Bank USA, N.A. is entitled to final summary judgment as a matter of law on the merits of the Plaintiff's claims in favor of the Defendant and against the Plaintiff.

## **CONCLUSION**

The Court finds that there is no genuine issue of material fact on issues dispositive of this adversary proceeding and that Defendant is entitled to judgment as a matter of law in its favor and against the Plaintiff as to all claims asserted in her Complaint. The Court will enter judgment accordingly by separate entry.

###